UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JANINE T.,[1]

                              Plaintiff,                 Case # 23-CV-384-FPG

v.                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Janine T. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 6, 9. For the reasons that follow, the Commissioner's motion is GRANTED, and Plaintiff's motion is DENIED.

## BACKGROUND

In November 2020, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 82. She alleged disability since August 2019. *Id.* In November 2021, Administrative Law Judge Linda Crovella ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 18-30. In March 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 3.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted).

### II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  Tr. 20.  At step two, the ALJ found that Plaintiff has severe impairments of polyarticular osteoarthritis, lumbar degenerative disc disease, chronic obstructive pulmonary

disease, and asthma/vasomotor rhinitis.  *Id.*  At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any Listings impairment.  Tr. 24.

Next, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of light work.  Tr. 24.  At step four, the ALJ found that Plaintiff could perform past relevant work as a teacher's aide.  Tr. 29.  Accordingly, the ALJ concluded that Plaintiff is not disabled.  Tr. 30.

## II.   Analysis

Plaintiff argues that remand is warranted on several grounds.  The Court analyzes each ground in turn.

### a.  Depression

Plaintiff argues that the ALJ erroneously evaluated her depression.  ECF No. 6-1 at 11-15.  First, she contends that the ALJ erroneously found her depression nonsevere without the benefit of a medical opinion.  In Plaintiff's view, the ALJ's analysis amounts to an improper "lay opinion" based on "bare medical findings."  *Id.* at 12.

Medical records from 2017 through 200 indicate that Plaintiff has a history of depression but that Plaintiff denied any persistent symptoms.  *See, e.g.*, Tr. 385, 387, 389, 391, 398, 400, 402, 406, 410, 413, 423, 880.  Plaintiff reported that she sometimes felt overwhelmed, including from life circumstances like the death of an uncle or the failure to sell her house, but did not request treatment or medication.  *See* Tr. 863, 871, 874, 1039.  In December 2020, Plaintiff indicated that she had no mental health impairments for purposes of her benefits application.  Tr. 264.

In spring and summer 2021, Plaintiff stated to SSA that she was "becoming more depressed" due to her circumstances and inability to work.  Tr. 269, 280.  In July 2021, Plaintiff

had a mental-health clinical assessment.  Tr. 1039.  Plaintiff stated that her physical ailments and various life occurrences had taken a toll on her mental health, which contributed to her depression.  *Id.*  Plaintiff was assessed for "no anxiety and mild depression."  Tr. 1046.  It was recommended that she receive counseling "focusing on stress management, improving problem solving, developing coping skills and support and encouragement."  Tr. 1046.  Plaintiff attended one session before discontinuing treatment.  Tr. 1053.  At an appointment in December 2021, Plaintiff denied any psychiatric symptoms.  Tr. 1067.  At the May 2022 hearing, Plaintiff did not discuss her depression.  *See* Tr. 50-74.

The ALJ found Plaintiff's depression nonsevere, considering her normal mental-status examinations and life activities.  Tr. 21-23.  The ALJ noted that Plaintiff's depression was mild and adequately managed.  Tr. 21.  No "aggressive treatment" was recommended or anticipated.  *Id.*  The ALJ included no restrictions related to Plaintiff's depression in the RFC.  *See* Tr. 24.

The Court cannot conclude that the ALJ impermissibly relied on "bare medical findings" and her own "lay" opinion to draw these conclusions.  ECF No. 6-1 at 12-13.  As a general matter, "an ALJ's ability to make inferences about the functional limitations that an impairment poses does not extend beyond that of an ordinary layperson.  While an ALJ may render common sense judgments about functional capacity, [she] must avoid the temptation to play doctor." *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020) (internal quotation marks and brackets omitted); *see also Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y.  Mar. 6, 2015) ("[W]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, as a general rule, the Commissioner may not make the connection himself." (internal quotation marks omitted)).  An ALJ "may not interpret raw

medical data in functional terms," *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293 (W.D.N.Y. 2018), and for that reason, it is only where the claimant shows relatively little impairment that an ALJ may infer functional limitations from the medical evidence. *House v. Astrue*, No. 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013). Nevertheless, it bears emphasizing that an ALJ is otherwise free to make common sense inferences from the record. *See, e.g.*, *Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012) (summary order) (noting that ALJ could reasonably infer from claimant's own testimony that she did not need to "elevate her feet/knees for two hours on a daily basis"); *Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018) (ALJ drew permissible inferences from claimant's daily activities to conclude that claimant could perform light work).

In this case, the ALJ reasonably concluded that Plaintiff's depression was nonsevere in light of her own statements, her daily activities, the absence of medical treatment, and the apparent ability of Plaintiff to manage her symptoms without medical intervention. *See* Tr. 21-23. A complex medical analysis was not necessary to reach these conclusions—common-sense inferences could be drawn from readily understandable records and documents. For example, as a matter of common sense, the ALJ could reasonably infer from Plaintiff's own statement that she has no "psych problems" that Plaintiff's depression did not significantly limit her ability to perform basic work activities. Tr. 264. The ALJ did not veer into the realm of complex medical evaluation when she found Plaintiff's depression non-severe based on the cited evidence.

Plaintiff contends that, regardless, the ALJ should have further developed the record given the absence of any medical opinions concerning Plaintiff's depression. ECF No. 6-1 at 13. Contrary to Plaintiff's argument, opinion evidence "is not required when the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity."

*Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (summary order) (internal quotation marks and brackets omitted). Because the ALJ could render reasonable findings based on the record before her, the ALJ was not required to further develop the record by obtaining a medical opinion. *See, e.g.*, *Edwards v. Comm'r of Soc. Sec.*, No. 20-CV-8843, 2023 WL 3336513, at *7 (S.D.N.Y. May 10, 2023).

Finally, Plaintiff argues that because the ALJ found, at step two, that Plaintiff was mildly limited in her abilities to interact with others and concentrate and maintain pace, the ALJ was required to include *some* limitation related to her depression in the RFC. *See* ECF No. 6-1 at 14-15. The Court is not persuaded. "[A] finding of mental limitation in analysis of the paragraph B criteria at Step 2 does not necessarily imply a corresponding limitation in a claimant's RFC." *Kathryn A. v. Comm'r of Soc. Sec.*, No. 22-CV-1392, 2023 WL 8596012, at *9 (D. Conn. Dec. 12, 2023). In this case, the Court understands the ALJ to have omitted any mental-health restrictions in the RFC for the same reasons that she deemed Plaintiff's depression non-severe, including the normal mental-health examinations, the absence of treatment, and Plaintiff's daily activities. *See* Tr. 21-23. Plaintiff has not shown that the ALJ's rationale was unreasonable.

Accordingly, with respect to her depression, Plaintiff has identified no error in the ALJ's decision.

### b. Stale Opinions

Plaintiff argues that the ALJ could not have reasonably relied on the opinions of consultative examiner Russell Lee, M.D., state-agency review physician A. Vinluan, M.D., and state-agency review physician R. Dickerson, M.D., because those opinions had become stale. ECF No. 6-1 at 15.

Plaintiff has long suffered from lower back pain.  *See* Tr. 638, 834.  In connection with her benefits application, Plaintiff attended a consultative examination with Dr. Lee in January 2021.  Tr. 834.  Based on his examination, Dr. Lee diagnosed Plaintiff with, among other things, lower back pain, and opined that Plaintiff would be moderately limited in her ability to engage in "activities involving prolonged standing."  Tr. 837.  In April 2021, Dr. Vinluan reviewed Plaintiff's then-existing medical records and determined that she had a severe spine disorder but had the capacity to perform light work, with additional restrictions.  Tr. 85, 88.  He opined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and could occasionally crawl.  *See* Tr. 88.  In June 2021, Dr. Dickerson reviewed Plaintiff's records and reached the same conclusion as Dr. Vinluan.  Tr. 103-04.

The ALJ found all three opinions partially persuasive.  Tr. 28-29.  She found the opinions consistent with Plaintiff's subjective complaints, the diagnostic findings, and her physical examinations.  *Id.*  Ultimately, the ALJ concluded that Plaintiff could perform light work, except that she could occasionally crawl and climb ramps and stairs, but could never climb ladders, ropes, and scaffolds.  Tr. 24.

 Plaintiff does not contend that, at the times the opinions were rendered, they were erroneous or inconsistent with the then-existing medical evidence.  Instead, she makes a narrow argument that the opinions became stale because, starting in summer 2021, her low back pain worsened.  This argument does not warrant remand.

While it is true that "[a] medical opinion may be stale if it does not account for the [plaintiff's] deteriorating condition," *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017), "a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018).  In

fact, a dated opinion "may constitute substantial evidence if it is consistent with the record as a whole." *Id.*; *see also Andrews v. Berryhill*, No. 17-CV-6368, 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (no error where an ALJ relied on dated opinions because there was no indication in plaintiff's records that his condition had significantly deteriorated)). Therefore, where an ALJ reasonably finds that a claimant's condition "ha[s] not deteriorated," a medical opinion is not "rendered stale by the passage of time." *Emery S. v. Comm'r of Soc. Sec.*, No. 20-CV-662, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021).

Here, the Court understands the ALJ to have found that Plaintiff's lower-back condition remained stable during the period under review, and, by implication, did not deteriorate starting in summer 2021. To be sure, there is conflicting evidence on that issue. On June 1, 2021, Plaintiff visited a rheumatologist complaining of localized lower back pain. Tr. 987. Although Plaintiff reported progressively worsening symptoms and an inability to stand for "too long," it was observed that Plaintiff had a non-antalgic gait and ambulated without assistance. *Id.* Imaging showed a "mild apex left scoliosis centered around L3" and "[m]ild facet arthritis" throughout the "lumbar spine," with full alignment and no fracture or dislocation. Tr. 995. Multilevel degenerative changes were noted with no evidence of inflammatory arthritis. *Id.* Plaintiff was directed to take over-the-counter Tylenol. Tr. 997. Plaintiff was referred to physical therapy with a six-month follow-up appointment. Tr. 998. Plaintiff attended one physical-therapy visit before being referred for an MRI. Tr. 58-59. In September 2021, Plaintiff received an MRI of her lumbar spine, which revealed degenerative spondylosis at L2-L3 and L5-S1. Tr. 1054. At an appointment in October 2021, Plaintiff reported constant lower back pain rated at a 4/10 in severity, which was aggravated by standing and walking. Tr. 1056. A physical examination revealed pain in her lower back upon rotation, extension, and flexion. Tr. 1056,

1058.  Plaintiff was assessed with moderate radicular pain.  *Id.*  Plaintiff received injections in her lumbar spine.  *See* Tr. 1060.  Plaintiff later reported that the treatment did not provide any relief.  Tr. 1069.  Plaintiff received another injection in January 2022.  Tr. 1071. A March 2022 treatment note indicates that Plaintiff walked with a non-antalgic gait and without assistance.  Tr. 1074.  At the May 2022 hearing, Plaintiff reported that she was always in pain.  Tr. 59, 67. Plaintiff testified that she could not walk more than two blocks without a cane due to her back pain.  Tr. 69.

The ALJ was entitled to resolve this conflicting evidence in the manner that she did. Notwithstanding the evidence that Plaintiff cites, the ALJ reasonably concluded that Plaintiff's lower back pain had not deteriorated.  *See Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021); *Gogos v. Comm'r of Soc. Sec.*, No. 18-CV-1188, 2020 WL 128445, at *3 (W.D.N.Y. Jan. 10, 2020) ("It is the ALJ's job to resolve conflicting record evidence and the Court must defer to that resolution.").  Both before and after her alleged deterioration, Plaintiff had complained of constant lower-back pain that was aggravated by standing and walking, yet during the same time period she was observed to walk with a normal gait and without assistive devices.  Tr. 25-26, 834, 836, 987, 1074.  Similarly, the decreased lumbar motion noted at Plaintiff's October 2021 appointment was also evident at Dr. Lee's January 2021 examination.  Tr. 836, 1058.  The ALJ could reasonably find that Plaintiff's condition in early 2021 remained stable through late 2021, and therefore the medical opinions were "not rendered stale by the passage of time."  *Emery S.*, 2021 WL 2592363, at *4.

Plaintiff's argument does not justify remand.

**CONCLUSION**

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is DENIED.  The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 18, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York